UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | : : : : |
| Plaintiff, | : : Civil Action No. _____ |
| v. | : JURY TRIAL DEMANDED : : |
| DANIEL J. MOSCATIELLO, | : : |
| Defendant. | : : : |

## COMPLAINT

Plaintiff Securities and Exchange Commission (the "Commission"), 1617 JFK Boulevard, Suite 520, Philadelphia, Pennsylvania 19103, files this Complaint against Defendant Daniel J. Moscatiello ("Moscatiello"), whose last known address is 62 Paulson Road, Wrightstown, New Jersey, 08562, and alleges as follows:

### SUMMARY OF THE ACTION

1. This action involves insider trading by Moscatiello in the securities of Virtusa Corp. ("Virtusa") in advance of the September 10, 2020 public announcement that Baring Private Equity Asia ("BPEA") had agreed to acquire Virtusa in an all-cash transaction valued at approximately $2 billion.

2. Moscatiello misappropriated material nonpublic information regarding the acquisition from his domestic partner ("partner"), who was working in Virtusa's marketing department at that time. Using the information he misappropriated from her, Moscatiello purchased 250 short-term out-of-the-money Virtusa call options on September 9, 2020 for $27,621.

3. On September 10, 2020, Virtusa publicly announced the acquisition agreement, and Virtusa's stock price increased 24.64% from $40.50 to $50.48.

4. Moscatiello sold his call options that same day, realizing $89,904 in illegal profits.

5. By engaging in the conduct described in this Complaint, Moscatiello violated, and unless enjoined will continue to violate, Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. § 78j(b)], and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5].

## JURISDICTION AND VENUE

6. The Commission brings this action pursuant to Sections 21(d), 21(e), and 21A of the Exchange Act [15 U.S.C. §§ 78u(d)-(e), 78u-1] to enjoin such acts, practices, and courses of business, and to obtain disgorgement, prejudgment interest, civil money penalties, and such other and further relief the Court may deem just and appropriate.

7. The Court has jurisdiction pursuant to Sections 21(d), 21(e) and 27 of the Exchange Act [15 U.S.C. §§ 78u(d), 78aa]. Moscatiello, directly or indirectly, made use of the mails, or the means and instrumentalities of interstate commerce, or the facility of national security exchanges, in connection with the transactions, acts, practices, and courses of business alleged in this complaint.

8. Venue is proper pursuant to Section 27 of the Exchange Act [15 U.S.C. § 78aa], because certain of the acts, practices, and courses of business constituting the alleged violations occurred within the District of New Jersey, where Moscatiello resides.

**DEFENDANT**

9. Daniel J. Moscatiello, age 42, resides in Wrightstown, New Jersey. During the relevant time, he managed multiple small family businesses. He was also an active investor at all relevant times.

**RELEVANT ENTITIES**

10. Virtusa is an information technology company, incorporated in Delaware with its headquarters in Southborough, Massachusetts. Prior to its acquisition, Virtusa's common stock was registered with the Commission pursuant to Section 12(b) of the Exchange Act and traded under the ticker "VRTU" on the NASDAQ.

11. BPEA is a private investment firm based in Asia.

**TERMS USED IN THIS COMPLAINT**

12. Common stock is a form of equity ownership in a corporation.

13. Options contracts are financial instruments that offer the buyer an opportunity to buy or sell – depending upon the type of options contract – an underlying asset such as stock.

14. A call option is a specific type of options contract that gives the owner the right, but not the obligation, to buy 100 shares of the underlying stock at a set price per share, known as the option's strike price, on or before a set future date, known as the option's expiration date.

15. Generally, the holder of a call option benefits when the price of the underlying stock increases. Thus, a trader might purchase a call option if he or she expects the underlying stock's price to exceed the strike price before the expiration date.

16. A call option is considered "out-of-the-money" when the current market price of the underlying stock is lower than its strike price.

## FACTS

**A.     BPEA'S Acquisition of Virtusa**

17.     In August and early September of 2020, Virtusa was engaged in acquisition talks with BPEA.

18.     By September 7, 2020, BPEA and Virtusa were finalizing the terms of the merger agreement whereby BPEA would acquire Virtusa.

19.     At that time, Moscatiello's partner worked in Virtusa's marketing department. Her responsibilities included working on press releases for the company.

20.     On September 8, 2020 at approximately 11:32 a.m. (ET), Moscatiello's partner learned highly confidential information regarding the likely acquisition of Virtusa during a telephone conversation with a member of Virtusa's management team. During this phone call, she was asked to begin working on the public announcement of the impending acquisition.

**B.     Moscatiello Misappropriated Material Nonpublic Information Regarding the Virtusa Acquisition from His Partner.**

21.     During this time, Moscatiello's partner worked full time from the home she shared with Moscatiello.

22.     Moscatiello also worked from home during most of his workday, travelling to his nearby office periodically as needed.

23.     After learning of the impending acquisition at about 11:32 am on September 8, 2020, Moscatiello's partner spent the remainder of the day participating in phone calls and working to prepare for the public announcement of the acquisition from the home she shared with Moscatiello.

24.     Later that day, she told Moscatiello that she had to work into the evening and would be on an 11:30 p.m. videoconference with work colleagues.

25.     From 11:30 p.m. September 8 to 12:16 a.m. on September 9, 2020, Moscatiello's partner participated in a videoconference work meeting from her home office, located directly adjacent to the bedroom she shared with Moscatiello.

### C. Moscatiello Purchased Short-Term, Out-of-the-Money Call Options in Virtusa on the Basis of the Material Nonpublic Information He Misappropriated.

26.     The next morning on September 9, 2020, from approximately 9:56 a.m. to 10:03 a.m., Moscatiello signed into his brokerage account from his office. With knowledge of the upcoming Virtusa acquisition that he gleaned from overhearing and/or observing his partner's work, Moscatiello placed orders to buy 250 short-term out-of-the-money Virtusa call options in three different options series. Specifically,

   a. at 9:56 a.m., Moscatiello purchased 50 Virtusa call options with a $40 strike price and an expiration date of September 18, 2020.

   b. at 9:59 a.m., Moscatiello purchased 100 Virtusa call options with a $45 strike price and an expiration date of September 18, 2020.

   c. at 10:03 a.m., Moscatiello purchased 100 Virtusa call options with a $45 strike price and an expiration date of October 16, 2020.

27.     In total, on September 9, 2020, Moscatiello spent $27,621 on out-of-the-money Virtusa call options.

28.     This was the first time Moscatiello had ever purchased Virtusa securities, despite being an active trader who owned and controlled multiple brokerage accounts.

29.     Moscatiello's purchase of the 250 call options on September 9, 2020 accounted for 100% of the total Virtusa options trading volume that day.

30. On September 10, 2020, before the market opened, BPEA and Virtusa publicly announced that BPEA was acquiring Virtusa, and Virtusa's stock price increased 24.64% from $40.50 to $50.48.

31. Just minutes after the market opened on that morning, Moscatiello sold all the Virtusa options he had purchased less than 24 hours earlier, realizing $89,904 in illicit profits.

32. This trade was an outlier compared to Moscatiello's other trading activity because he typically held investments for longer periods of time, not less than 24 hours, and it was the most profitable trade he made in 2020.

33. Although Moscatiello typically discussed his trading with his partner, he concealed his trading in Virtusa from her, placing the orders from his work office, rather than from home, and failing to mention the 325% gain that he netted on the Virtusa options in less than 24 hours.

### D. Moscatiello Violated the Federal Securities Laws.

34. At all relevant times, Moscatiello owed a duty of trust and confidence to his partner, based on their relationship which included a history, pattern, and practice of sharing confidences. At the time of Moscatiello's trading, he and his partner had been in a committed relationship for approximately four years and had lived together for approximately two years.

35. Moscatiello obtained material, nonpublic information about the Virtusa acquisition by listening in on and/or observing his partner's work on the acquisition.

36. A reasonable investor would have viewed the information about the Virtusa acquisition as being important to the decision of whether to invest in Virtusa securities.

37. Moscatiello knew, or was reckless in not knowing, that the information he obtained about the Virtusa acquisition was material, nonpublic information and that he owed a

duty of trust and confidence to his partner not to trade Virtusa securities on the basis of that information.

38. By purchasing Virtusa call options after learning information relating to the acquisition, Moscatiello misappropriated material, nonpublic information for securities trading purposes, in breach of a duty of trust and confidence he owed his partner.

## CLAIM FOR RELIEF
### Violations of Section 10(b) of the Exchange Act and Rule 10b-5 thereunder

39. The Commission re-alleges and incorporates by reference paragraphs one through 38 as though fully set forth herein.

40. By virtue of the foregoing, Moscatiello, directly or indirectly, singly or in concert with others, in connection with the purchase or sale of a security, with scienter, used the means or instrumentalities of interstate commerce, or of the mails, or of a facility of a national securities exchange to:

   a. employ devices, schemes, or artifices to defraud;
   b. make untrue statements of a material fact or to omit to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and/or
   c. engage in acts, practices, or courses of business which operated or would operate as a fraud or deceit upon others.

41. By virtue of the foregoing, Moscatiello, directly or indirectly, violated and, unless restrained and enjoined, will again violate, Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5].

## PRAYER FOR RELIEF

WHEREFORE, the Commission respectfully requests that this Court enter a Final Judgment:

### I.

Finding that Moscatiello violated the provisions of the federal securities laws as alleged herein;

### II.

Permanently restraining and enjoining Moscatiello and his agents, servants, employees, and all persons in active concert or participation with him who receive actual notice of the injunction by personal service or otherwise from, directly or indirectly, engaging in conduct in violation of Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5];

### III.

Ordering Moscatiello to disgorge, with prejudgment interest, all illicit trading profits or other ill-gotten gains received as a result of the conduct alleged in this Complaint, pursuant to Section 21(d)(5) of the Exchange Act [15 U.S.C. § 78u(d)(5)];

### IV.

Ordering Moscatiello to pay a civil monetary penalty pursuant to Section 21A of the Exchange Act [15 U.S.C. § 78u-1]; and

### V.

Granting such other and further relief as the Court may deem just and proper.

**JURY DEMAND**

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff demands that this case be tried before a jury.

Respectfully submitted,

Date: June 29, 2022

By: <u>s/ John V. Donnelly III</u>
John V. Donnelly III
Joseph G. Sansone
Julia C. Green
Megan Ryan
Han Nguyen

Attorneys for Plaintiff:
U.S. SECURITIES AND EXCHANGE COMMISSION
Philadelphia Regional Office
1617 JFK Boulevard, Suite 520
Philadelphia, PA 19103
215-597-3100 (phone)
215-597-2740 (fax)
DonnellyJ@sec.gov

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **SECURITIES AND EXCHANGE COMMISSION,** | : <br> : <br> : <br> : |
| Plaintiff, | : Civil Action No. _____ <br> : <br> : DESIGNATION OF AGENT FOR |
| v. | : SERVICE <br> : |
| **DANIEL J. MOSCATIELLO,** | : <br> : <br> : |
| Defendant. | : <br> : |

Pursuant to Local Rule 101.1(f), because the Securities and Exchange Commission (the "Commission") does not have an office in this district, the United States Attorney for the District of New Jersey is hereby designated as eligible as an alternative to the Commission to receive service of all notices or papers in the captioned action. Therefore, service upon the United States or its authorized designee, David Dauenheimer, Deputy Chief, Civil Division, United States Attorney's Office for the District of New Jersey, 970 Broad Street, 7th Floor, Newark, NJ 07102 shall constitute Service upon the Commission for purposes of this action.

Date:   June 29, 2022

s/ John V. Donnelly III
John V. Donnelly III
Joseph G. Sansone
Julia C. Green
Megan Ryan
Han Nguyen

Attorneys for Plaintiff:
U.S. SECURITIES AND EXCHANGE COMMISSION
Philadelphia Regional Office
1617 JFK Boulevard, Suite 520
Philadelphia, PA  19103
215-597-3100 (phone)
215-597-2740 (fax)
DonnellyJ@sec.gov